## DECEMBER TERM, 1843.

## WILLIAM B. MEARS AND JOHN WALKER *v.* EDWARD L. WINSLOW, *et al.*

The lien of an attachment commences and takes effect from the time of the *levy*, and not from the time of *issuing* the attachment.

THE bill charges, that on the 5th of April, 1841, the complainants, Mears and Walker, obtained a judgment against Edward L. Winslow, in the Superior Court of law in the county of Cumberland, in the State of North Carolina, for $7486·26, with interest at the rate of six per centum per annum till paid ; that the execution which issued thereon was returned by the sheriff of said county indorsed, " no property," &c. ; that said Winslow is a citizen and resident of the State of North Carolina, and is insolvent ; yet that he purchased of William W. Jones, and paid for, two tracts of land, lying in this State, one in the county of Yazoo, and the other in the county of Tallahatchie, and had procured the same to be conveyed to John W. Ochiltree, who now holds the same in trust for said Winslow, Ochiltree not even pretending to hold any beneficial interest therein ; that as Winslow resides without the limits of this State, a judgment cannot be obtained against him, and prays that Winslow and Ochiltree be made defendants, that said lands be sold and the proceeds applied to the payment of complainants' debt, and that Ochiltree be compelled to convey the same to the purchaser at the commissioner's sale; and prays for an attachment against the lands.

The bill was filed and the attachment issued on the 11th day of October, 1841. The attachment was levied on the land in Yazoo, on the 13th of October, 1841, and on the land in Tallahatchie, on the 9th of November, 1841. At the June term, 1842, John B. Wright and Charles P. Mallet, who are citizens of North Carolina, were made defendants, on their petition, and filed their answer, admitting the indebtedness of Winslow to the complainants, as charged

in their bill, but denying that either Winslow or Ochiltree has any interest, either legal or equitable, in said lands, and averred that they belonged to respondents ; that Wm. W. Jones had conveyed them to Ochiltree, for the use and benefit of Winslow, who paid for them as charged in the bill ; that Winslow resided in North Carolina, and had them conveyed to Ochiltree, who promised to repair to this State, and superintend them, for the greater facility in selling them, making titles, &c. ; that in May, 1840, Winslow, together with one Warren Winslow, his partner, being much indebted in North Carolina, conveyed all their property, including said lands, to respondents, in trust for the use and benefit of their (Winslows) creditors, which deed of trust was filed for record, and duly recorded in this State, on the 13th day of October, 1841 ; that, in pursuance of the intention and wish of the parties, Ochiltree, in September, 1841, conveyed the same lands to respondents, which deed was also filed for record on the 13th of October, 1841, thus giving respondents both the legal and equitable interest in said lands ; and that all the property, real and personal, conveyed by the said Edward L. and Warren Winslow to respondents in trust as aforesaid, will fall far short of discharging the debts therein provided for.

*George S. Yerger,* for complainants.

The bill in this case was filed under the act of 1821 (How. and Hutch. 520), and is commonly called a chancery attachment. Its object was to have sold the interest of Winslow in certain land mentioned and described in the bill.

The land was held by Ochiltree, as the bill avers, and the answers admit, for Winslow, who paid for it, but the deed was made to Ochiltree, to enable him to sell it for Winslow.

The bill was filed on the 11th of October, 1841.

The defendants, Walker and Mallett, claim it under a deed of trust from Winslow, made in May, 1840, recorded the 13th of October, 1841, and by deed in fee from Ochiltree, dated in September, 1841, and recorded at the same time of the deed of trust. The former is an assignment in trust for the benefit of creditors, and the latter is an absolute deed from Ochiltree to the trustees, or assignees, without expressing the trusts.

Mears & Walker *v.* Winslow, et al.

1. There is no question that Winslow's interest was subject, even at law, to execution. The entire interest and use was in him, and a bare legal estate in Ochiltree. How. and Hutch. p. 349, sec. 29.

2. There is likewise no question, that the lien of the attachment takes effect, in cases like this, from the filing of the bill, and not from the time the attachment is actually levied. Examine *Kenney* v. *Brent*, 6 Cranch, 144 ; 3 Randolph, 94 ; 3 Leigh, 299 ; 5 Munford, 178 ; 3 J. J. Marshall, 444 ; 5 Littell, 52 ; 3 Monroe, 406.

3. When lands are held by A for B, the transfer of the title is void as to the creditors of B, if not recorded. Mere equitable interests, perhaps, not subject to execution at law, may not be required to be recorded ; but an interest which by law is subject to a judgment, is certainly embraced in the act of Assembly. How. and Hutch. 343.

*E. Mason*, for Wright and Mallet.

Under the facts in this case, it is useless to say a word ; as equity follows the law, and acts by analogy to the rules of common law in relation to estates ; and the first maxims of equity, as laid down, apply to this case : "That where there is equal equity the law must prevail ; and a defendant has an equal right to the protection of a court of equity to protect his title, as the plaintiff has to assert one."

By our statute, deeds take effect from the date, if recorded within three months, except deeds of trust and mortgages. The one in question, from Ochiltree to Wright and Mallet, is a deed in fee, executed in September, 1841, and recorded in October, 1841; within a month.

Respondents pray that your Honor may make such a decree as will secure their title in the premises, that they may go on to apply the assets to pay the debts of Winslow.

CHANCELLOR. This bill is filed by the complainants, as creditors of E. L. Winslow, of the State of North Carolina, seeking to subject certain lands in this State, to the payment of their claim, under our chancery attachment law. It is alleged that, although the title to the land stands in the name of the defendant, Ochiltree, that, in point of fact, he holds the mere naked legal title, and that

the whole beneficial interest therein is in the defendant, Winslow. After the filing of the bill, Wright and Mallet were ordered to be made parties defendant upon their petition, showing an interest in the subject-matter of the suit. They accordingly answered and set up claim to the land by virtue of an assignment to them, by Winslow, in trust for the payment of debts, dated in May, 1840, and filed for record in this State on the 13th of October, 1841. That to enable them to carry out the trust, Ochiltree conveyed to them the legal title. (which he held merely for the use of Winslow) by deed, bearing date in September, 1841, and recorded at the same time with the deed of assignment from Winslow. The complainants' bill was filed, and attachment issued on the 11th of October, 1841, and levied on the land the 9th day of the following month. The only question which arises under this state of facts is, which binds the land, the attachment, or the deed of trust. The assignment by Winslow, and the conveyance from Ochiltree, are to be regarded as parts of the same transaction, and, taken together, amount to nothing more than a conveyance from Winslow in trust, for the payment of his debts. Deeds of trust, under our statute, take effect as against creditors only from the time they are recorded. This deed appears to have been recorded after the issuing but before the levying of the attachment. The simple inquiry then is, at what time does the lien arising under an attachment commence ? Is it from the date of the attachment, or the date of the levy ? The counsel for the complainant insists, that it takes effect from the time of filing the bill, or issuing the attachment. I have not been able to satisfy my mind of the truth of this proposition. A bill of this description bears no analogy whatever to a judgment creditor's bill, who, having exhausted his legal remedies, comes here to enforce the lien which his judgment gives him, in equity, upon the equitable assets of his debtor. In such case a priority is acquired, by filing the bill. I take it to be clear, that an attaching creditor in this, as in all other kinds of attachments, acquires no right, nor interest in, nor lien upon the land of the debtor, by simply issuing out an attachment. I do not find that the law gives to this description of attachment any higher dignity, or greater efficacy, than to the ordinary attachment at law. Suppose

Mears & Walker *v.* Winslow, et al.

the defendants, instead of claiming under the assignment in trust, had become the judgment creditors of Winslow, between the issuing and levying the attachment, the argument of the complainants' counsel would make the attachment overreach the lien of the judgment. And yet, in such a case, I am persuaded the priority of the judgment would be readily admitted. I think it will also be admitted, that the specific lien, created by the deed of trust, is quite as effective and comprehensive in its reach, as the general lien created by a judgment. I conclude, that the lien of an attachment commences and takes effect from the time of the levy, and not from the issuing of the attachment. This was the construction placed by the Supreme Court of Virginia upon the statute of that State, on the subject of chancery attachments, of which ours is almost a literal copy. *Williamson, et al.* v. *Bowie, et al.*, 6 Munf. Rep. 176. In that case, the Court said the attachment operates from the time of the service of the proofs. The same rule was laid down by the Supreme Court of South Carolina, in the case of *Stephen* v. *Thayer*, 2 Bay's Rep. 272. The opposite construction would be fraught with the greatest difficulty and injustice. It would even defeat a *bonâ fide* purchaser, who became such, *mesne* the issuing and levy of the attachment. Even if it were a proceeding in which the complainant set up title to the property, yet the notice arising from the *lis pendens*, would not commence until the actual service of the leading process, and of course could not affect a purchaser who became such prior to such service. *Murray* v. *Ballou*, 1 John. Ch. Rep. 576 ; 15 John. Rep. 315. From this view of the case I am of opinion, that the complainants' bill must be dismissed at their costs. Let a decree be prepared accordingly.